IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

KONSTANTIN GRIAZNOV
*Plaintiff/Counterclaim Defendant*,

v.

J-K TECHNOLOGIES, LLC.
*Defendant/Counterclaim Plaintiff.*

Civil Action No. ELH-16-2522

## MEMORANDUM OPINION

Konstantin Griaznov, plaintiff, has filed suit against J.K. Technologies, LLC ("J.K."),[1] defendant, arising from a dispute in connection with the importation of plaintiff's 2012 McLaren MP4-12C (the "Vehicle"). ECF 1, ¶¶ 6, 7. Under the terms of the parties' "Compliance and Conversion Agreement" ("Agreement"), J.K. agreed, *inter alia*, to "provide compliance and conversion services concerning the Vehicle for the purpose of satisfying the safety standards promulgated by" the United States Department of Transportation ("USDOT") and the United States Environmental Protection Agency ("EPA"). *See* ECF 17-2 (Agreement).

Griaznov alleges that J.K. has wrongful possession of the Vehicle. *See, e.g.*, ECF 1, ¶ 68. He seeks, *inter alia*, a declaration that J.K. cannot retain the Vehicle under Md. Code (2013 Repl. Vol., 2016 Supp.), § 16-202 of the Commercial Law Article ("C.L.") ("Garageman's Lien Statute"), because that statute is preempted by the National Traffic and Motor Vehicle Safety Act of 1966, as amended and recodified, 49 U.S.C. §§ 30101 *et seq.* ("Safety Act"). ECF 1, ¶¶ 28-46 (Count I). Griaznov also seeks an injunction requiring J.K. to export the Vehicle to Russia (*id.* ¶¶ 27, 47-54) (Count II). In addition, he asserts a claim for breach of contract (*id.* ¶¶ 55-71)

---

[1] Plaintiff refers to defendant as "J-K Technologies, L.L.C." (ECF 1), while defendant refers to itself as J.K. Technologies, LLC. ECF 7. I shall use the defendant's terminology.

(Count III) and Violation of the Maryland Consumer Protection Act, C.L. § 13-101(c)(1) (*id.*¶¶ 72-87) (Count IV).

J.K. filed an Answer and a Counterclaim.  ECF 7.  The Counterclaim contains one count, alleging breach of contract.  *Id.* at 11-12.  J.K. asserts that on August 12, 2016, it completed the conversion of the Vehicle to comply with USDOT regulations, and on August 30, 2016, it completed the conversion to meet EPA emissions standards.  *Id.* at 12, ¶¶ 20-21.  It seeks $168,287.82 for breach of the Agreement, representing the research, petition, parts, storage, and conversion of the Vehicle.  *Id.* at 11-12, ¶¶ 13-24.

Now pending is Griaznov's Motion for Leave to File Amended Complaint (ECF 17), supported by a memorandum (ECF 17-1) (collectively, "Motion") and exhibits.  ECF 17-2 through ECF 17-11.  In the proposed amended complaint (ECF 17-10, "Amended Complaint"), plaintiff seeks to add claims for replevin; trespass to chattel; trover and conversion; and additional injunctive relief.  *See* ECF 17-11.  In addition, he seeks to add as defendants Lois Joyeusaz and Jonathan Weisheit, the two "members" of J.K. (collectively, "Members").  J.K. opposes the Motion (ECF 19, "Opposition"), and submitted two exhibits with its Opposition.  ECF 19-1 and ECF 19-2.  Griaznov replied (ECF 20, "Reply"), and appended additional exhibits.  ECF 20-1 through ECF 20-7.

The Motion is fully briefed and no hearing is necessary to resolve it.  *See* Local Rule 105.6.  For the reasons that follow, I shall grant the Motion in part and deny it in part.

## I.      Factual and Procedural Background[2]

Griaznov is a citizen of Russia who is domiciled in the State of Florida.  ECF 1, ¶ 1.  He is the owner of a "2012 McLaren MP4-12C", which was valued at $278,597 in July 2013.  *Id.* ¶ 6.

---

[2] Given the posture of the case, I accept as true the facts alleged in the Complaint.

J.K. is a limited liability company organized under the laws of Maryland, where it maintains its principal place of business. *Id.* ¶ 2. J.K. is a "Registered Importer" with the National Highway Traffic Safety Administration ("NHTSA"). *Id.* ¶ 8; *see* 49 C.F.R. §§ 592.1 *et seq.*

Griaznov and J.K. executed the Agreement on July 12, 2013. ECF 1, ¶ 7; *see* ECF 17-2 at 6. As noted, under the Agreement, J.K. agreed to "provide compliance and conversion services concerning the Vehicle for the purpose of satisfying the safety standards promulgated" by the USDOT and the EPA. ECF 1, ¶ 7; *see also* ECF 17-2. The Agreement provided, *inter alia*, an estimated base cost of $18,000 for the conversion, a flat fee of $2,500 "for the preparation and filing of a petition for eligibility", and a $25 per day storage fee, which would only be assessed under certain conditions. ECF 1, ¶ 9; *see* ECF 17-2, ¶¶ 7, 8, 11, 13-15. The Agreement also required plaintiff to pay a deposit of $18,000. ECF 1, ¶ 10; *see* ECF 17-2 ¶ 7. And, either party "shall have the right to terminate this Agreement for any reason upon thirty (30) days of notice to the other party." ECF 17-2, ¶ 15.

Griaznov imported the Vehicle to the United States on or around July 16, 2013. ECF 1 ¶ 12. At that time, J.K. informed Griaznov that a "petition for eligibility had to be filed with NHTSA" to determine whether the Vehicle was eligible for import. *Id.* ¶ 15.[3] On August 8, 2013, J.K. filed a Petition for Import Eligibility Determination with NHTSA to determine the eligibility for importation of 2012 McLaren MP4-12Cs. *Id.* ¶ 15. Thereafter, J.K. filed three amended petitions, on December 10, 2013, January 6, 2014, and January 30, 2014. *Id.* On November 15, 2014, J.K. informed an agent of NHTSA that it had "obtained all parts and

---

[3] Under the Safety Act and its implementing regulations, vehicles imported to the United States must meet certain minimum standards. *See, e.g.*, 49 C.F.R. Pt. 593. Although I need not conduct an exhaustive review of the import process, the process is highly regulated by the USDOT. *See id.*

programs for the conversion of the Vehicle." *Id.* ¶ 17.   NHTSA approved the final amended petition on April 3, 2015.  *Id.* ¶ 16.

On January 16, 2015, after Griaznov "became increasingly frustrated with the amount of time that had passed since the submission of the original petition, [J.K.] indicated that the Contract could be cancelled." ECF 1, ¶ 18.   According to the Complaint, J.K. "informed Mr. Griaznov that he would simply need to pay the petition fee and storage fees [of $25 per day] and that the balance of the deposit would be returned." *Id.*

J.K. subsequently submitted an invoice to Griaznov reflecting $20,898.16 in charges. *Id.* ¶ 19 ("First Invoice").[4]   The First Invoice included $250 for the "Translation of Title Documents"; $3,343.16 for the "Customs Bond"; $14,550 for storage fees; and $2,755 for the "Petition of Eligibility." *Id.*   J.K. applied the $18,000 deposit to the invoice, resulting in its claim of a balance due and owing in the amount of $2,898.16.  *Id.* ¶ 20.

On March 31, 2015, J.K. informed Griaznov that it would prepare a quote for parts and programming.  ECF 1, ¶ 21.   On April 6, 2015, Griaznov requested a parts list.  *Id.* ¶ 22.   Then, on April 23, 2015, J.K. indicated that it was going to "send its chief programmer to California to obtain the parts and programs for the Vehicle . . . ." *Id.*   J.K. indicated that the trip would cost $5,500 and requested Griaznov's approval.  *Id.*   Griaznov did not approve the trip.  *Id.* ¶ 23.   J.K. submitted the parts list on May 15, 2015.  *Id.* ¶ 25.

"Soon thereafter, Mr. Griaznov cancelled the Contract and informed J.K. . . . that he would like to export the Vehicle to Russia." *Id.* ¶ 25.   Griaznov insists that he never approved the purchase of any parts or the provision of any labor for the conversion of the Vehicle.  *Id.*

---

[4] The Complaint does not provide either the date of the First Invoice or the date Griaznov received the First Invoice.  Nor was it included as an exhibit.

On June 30, 2015, J.K. submitted a second invoice to Griaznov.  *Id.* ¶ 26; *see* ECF 17-4 (Invoice No. 1965, "Second Invoice").  The Second Invoice reflected total charges of $41,069.87, including $29,919.87 for parts; $8,100 for labor; and $3,050 for storage.  ECF 1 ¶ 26; *see* ECF 17-4.[5]  Despite plaintiff's "numerous" requests, J.K would not export the Vehicle until it received payment of the outstanding balance.  ECF 1, ¶ 27.

In the Motion, Griaznov claims that new information came to light following the initiation of the suit.  He asserts that J.K.'s Counterclaim "revealed, for the first time, that [J.K.] completed the conversion [of the Vehicle] on or about August 12, 2016."  ECF 17-1 at 3; *see* ECF 7 at 12, ¶ 20.  Plaintiff also notes that the Counterclaim states that the cost due to J.K. is now $168,287.82.  ECF 17-1 at 3; *see* ECF 7 at 12, ¶ 24.

In support of J.K.'s Opposition, Weisheit submitted an Affidavit providing additional details as to the status of the Vehicle during the spring and summer of 2015.  ECF 19-1.  He avers that all work "on the conversion of the Vehicle was completed by J.K. in the April/May time period of 2016."  *Id.* ¶ 8.  According to Weisheit, after J.K. completed its work, J.K. "was required by law to have the manufacturer of the Vehicle (McLaren) remedy any recalls."  *Id.* ¶ 9.  On June 14, 2016, "the Vehicle was sent to McLaren to have multiple factory recalls performed and was completely serviced and checked over by the manufacturer's representatives."  *Id.* ¶ 10.  Weisheit claims that J.K. paid McLaren $10,610.31 for those services.  *Id.*  According to Weisheit, J.K. did not receive the Vehicle from McLaren until July 15, 2016.  *Id.* ¶ 11.  And, on August 12, 2016, USDOT released the bond on the Vehicle.  *Id.* ¶¶ 13-15.  The bond with the EPA and U.S. Customs was released on August 30, 2016.  *Id.*

---

[5] The Second Invoice does not reflect the remaining balance of $2,898.16 from the First Invoice.  *See* ECF 17-4.

On November 3, 2016, the parties agreed to "maintain the *status quo*." ECF 19-2 (letter confirming *status quo* agreement). In particular, J.K. agreed to "refrain from altering, modifying, damaging, destroying, and/or selling the Vehicle", and to retain the Vehicle "in a secured location while the [case] is pending." *Id.*

## II.    Standard of Review

Fed. R. Civ. P. 15(a)(2) states: "[A] party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." *See also Foman v. Davis*, 371 U.S. 178, 182 (1962); *Talley v. Ocwen Loan Servicing, LLC.*, ___ Fed. App'x ___, No. 16-1478, 2017 WL 218858 at *1 (4th Cir. Jan. 19, 2017) (per curiam); *Goode v. Cent. Virginia Legal Aid Soc'y, Inc.*, 807 F.3d 619, 628 (4th Cir. 2015).

Under Rule 15(a), the district court has "broad discretion concerning motions to amend pleadings . . . ." *Booth v. Maryland*, 337 Fed. App'x 301, 312 (4th Cir. 2009) (per curiam); *see also Foman*, 371 U.S. at 182; *Laber v. Harvey*, 438 F.3d 404, 426-29 (4th Cir. 2006) (en banc). A district court may deny a motion to amend for reasons "such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment or futility of the amendment." *Booth*, 337 Fed. App'x at 312 (quoting *Foman*, 371 U.S. at 182).

"Delay alone is an insufficient reason to deny leave to amend." *Edwards v. City of Goldsboro*, 178 F.3d 231, 242 (4th Cir. 1999) (citation omitted); *see also Davis v. Piper Aircraft Corp.*, 615 F.2d 606, 613 (4th Cir. 1980) ("Delay alone however, without any specifically resulting prejudice, or any obvious design by dilatoriness to harass the opponent, should not suffice as reason for denial."); *Brightwell v. Hershberger*, DKC-11-3278, 2015 WL 5315757, at

*3 (D. Md. Sept. 10, 2015) ("Delay, however, 'cannot block an amendment which does not prejudice the opposing party.'") (quoting *Frank M. McDermott, Ltd. v. Moretz*, 898 F.2d 418, 421 (4th Cir. 1990)). "Rather, the delay must be accompanied by prejudice, bad faith, or futility." *Edwards*, 178 F.3d at 242 (citation omitted); *see Simmons v. United Mortg. & Loan Inv., LLC*, 634 F.3d 754, 769 (4th Cir. 2011); *Equal Rights Center v. Niles Bolton Assocs.*, 602 F.3d 597, 603 (4th Cir. 2010); *Nourison Rug Corp. v. Parvizian*, 535 F.3d 295, 298 (4th Cir. 2008); *Steinburg v. Chesterfield Cnty. Planning Comm'n*, 527 F.3d 377, 390 (4th Cir. 2008).

"Perhaps the most important factor listed by the [Supreme] Court for denying leave to amend is that the opposing party will be prejudiced if the movant is permitted to alter a pleading." 6 C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1487 at 701 (3d ed.) ("Wright & Miller") (citing *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321 (1971); *United States v. Hougham*, 364 U.S. 310 (1960)). The burden of showing prejudice falls on "the party opposing amendment." *Atl. Bulk Carrier Corp. v. Milan Exp. Co.*, 3:10-cv-103, 2010 WL 2929612, at *4 (E.D. Va. July 23, 2010). "[I]f the court is persuaded that no prejudice will accrue, the amendment should be allowed." Wright & Miller, § 1487 at 701.

In *Newport News Holdings Corp. v. Virtual City Vision, Inc.*, 650 F.3d 423, 439 (4th Cir. 2011), the Court said: "Whether an amendment is prejudicial will often be determined by the nature of the amendment and its timing . . . . [T]he further the case progressed before judgment was entered, the more likely it is that the amendment will prejudice the defendant . . . ." (quoting *Laber*, 438 F.3d at 427) (alteration in *Laber*). To be sure, "prejudice can result where a proposed amendment raises a new legal theory that would require the gathering and analysis of facts not already considered by the opposing party, but that basis for a finding of prejudice essentially applies where the amendment is offered shortly before or during trial." *Johnson v. Oroweat*

*Foods Co.*, 785 F.2d 503, 510 (4th Cir. 1986).  In contrast, "[a]n amendment is not prejudicial . . . if it merely adds an additional theory of recovery *to the facts already pled* and is offered before any discovery has occurred." *Laber*, 438 F.3d at 427 (emphasis added).  Therefore, the court must examine the facts of each case "to determine if the threat of prejudice is sufficient to justify denying leave to amend." Wright & Miller, § 1487 at 701.

Furthermore, a proposed amendment must not be futile.  *See Foman*, 371 U.S. at 182. According to the Fourth Circuit, a proposed amendment should be denied as futile "when the proposed amendment is clearly insufficient or frivolous on its face." *Johnson*, 785 F.2d at 510; *see also* Wright & Miller § 1487 ("[A] proposed amendment that clearly is frivolous, advancing a claim or defense that is legally insufficient on its face,[] or that fails to include allegations to cure defects in the original pleading,[] should be denied.").  A motion to amend can also be denied on the basis of futility where the proposed amendment "could not withstand a motion to dismiss." *Perkins v. United States*, 55 F.3d 910, 917 (4th Cir. 1995); *see also Devil's Advocate, LLC v. Zurich Am. Ins. Co.*, ___ Fed. App'x ___, No. 15-1048, 2016 WL 6871905, at *8 (4th Cir. Nov. 22, 2016) (per curiam) (affirming district court's denial of leave to amend on the basis of futility, because the amended complaint would not survive a motion to dismiss under Rule 12(b)(6)); *Moretz*, 898 F.2d at 420-21 ("There is no error in disallowing an amendment when the claim sought to be pleaded by amendment plainly would be subject to a motion to dismiss under Fed. R. Civ. P. 12(b)(6).").

But, the review for futility "is not equivalent to an evaluation of the underlying merits of the case.  To the contrary, '[u]nless a proposed amendment may clearly be seen to be futile because of substantive or procedural considerations, . . . conjecture about the merits of the litigation should not enter into the decision whether to allow amendment." *Next Generation*

*Grp., LLC v. Sylvan Learning Ctrs., LLC*, CCB-11-0986, 2012 WL 37397, at \*3 (D. Md. Jan. 5, 2012) (quoting *Davis*, 615 F.2d at 613).

Here, the motion for leave to amend was timely filed within the time provided by the Court's Scheduling Order. *See* ECF 12. Nor is there a basis to find prejudice due to delay. *See id.* However, as noted, leave to amend may also denied if the proposed amendment would not survive a motion to dismiss under Rule 12(b)(6). *See, e.g.*, *Perkins*, 55 F.3d at 917. Therefore, I will briefly review the standard for dismissal under Rule 12(b)(6).

A defendant may test the legal sufficiency of a complaint by way of a motion to dismiss under Rule 12(b)(6). *Goines v. Valley Cmty, Servs, Bd.*, 822 F.3d 159, 165-66 (4th Cir. 2016); *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010), *aff'd sub nom. McBurney v. Young*, ___ U.S. ____, 133 S. Ct. 1709 (2013); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted." Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Fed. R. Civ. P. 8(a)(2). It provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of the rule is to provide the defendants with "fair notice" of the claims and the "grounds" for entitlement to relief. *Bell Atl., Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

To survive a motion under Fed. R. Civ. P. 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' . . . ." (citation omitted)); *see also Hall v. DirecTV, LLC*, ___F.3d ___, No. 15-1857, 2017 WL 361065, at \*4 (4th Cir. Jan. 25, 2017). But, a plaintiff need not

include "detailed factual allegations" in order to satisfy Rule 8(a)(2).  *Twombly*, 550 U.S. at 555.

Moreover, federal pleading rules "do not countenance dismissal of a complaint for imperfect

statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby*, ___ U.S.

____, 135 S. Ct. 346, 346 (2014) (per curiam).

Nevertheless, the rule demands more than bald accusations or mere speculation.

*Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir.

2013).  If a complaint provides no more than "labels and conclusions" or "a formulaic recitation of

the elements of a cause of action," it is insufficient.  *Twombly*, 550 U.S. at 555.  Rather, to satisfy

the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter

(taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those

facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556

(internal quotations omitted).

### III.    Discussion

As noted, Griaznov seeks to amend his Complaint to add as defendants the sole Members

of J.K., Lois Joyeusaz and Jonathan Weisheit, and to assert several new claims.

### A.  Addition of Individual Defendants

Griaznov's Amended Complaint seeks to add as defendants the two Members of J.K.:

Joyeusaz and Weisheit.  *See, e.g.*, ECF 17-1 at 5.  According to Griaznov, the Members are liable

for the torts of J.K. because they personally "committed, inspired, or participated" in J.K.'s "tortious

conduct." ECF 20 at 16.  J.K. opposes the amendment, claiming it is brought in bad faith and

based on futility.  ECF 19.

It is well settled that "[a] corporation exists as a legal entity separate and distinct from its

corporate shareholders." *Cancun Adventure Tours, Inc. v. Underwater Designer Co.*, 862 F.2d

1044, 1047 (4th Cir. 1988); *see Johnson v. Flowers Indus., Inc.*, 814 F.2d 978, 980 (4th Cir.

1987).   Notably, a corporation is a "creature of legal fiction," and "a corporation must of necessity

act through its agents . . . ." *Southern Management Corp. v. Taha*, 378 Md. 461, 480, 836 A.2d

627, 638 (2003) (citations omitted).   Similarly, under Maryland law, a member of a limited

liability company ("LLC) is not "personally liable for the obligations of the limited liability

company, whether arising in contract, tort or otherwise, solely by reason of being a member of

the limited liability company."   Md. Code (2014 Repl. Vol., 2016 Supp.), § 4A-301 of the

Corporations & Associations Article; *see Allen v. Dackman*, 413 Md. 132, 158, 991 A.2d 1216,

1228 (2010) ("[A] member of an LLC generally is not liable for torts committed by, or contractual

obligations acquired by, the LLC.").   And, "a person cannot be held liable under a contract to

which he was not a party. . . ." *Residential Warranty Corp. v. Bancroft Homes Greenspring

Valley, Inc.*, 126 Md. App. 294, 316, 728 A.2d 783, 794 (1999).

The concept of a corporation as a separate legal entity "is expressed by the colorful

metaphor of the corporate veil, which presumes that acts of the corporation are not acts of the

shareholder." *Johnson*, 814 F.2d at 980.   The corporate veil doctrine "is a basic attribute of the

corporate form; it encourages business investment and fosters stability in commercial

transactions." *Cancun Adventure*, 862 F.2d at 1047.   The same logic applies to a LLC.

In *Bart Arconti & Sons, Inc. v. Ames–Ennis, Inc.*, 275 Md. 295, 340 A.2d 225, 234

(1975), the Maryland Court of Appeals observed that, in the absence of fraud or unless necessary

to enforce a paramount equity, shareholders are generally not liable for the acts of a corporation.

It said, *id*. at 310, 340 A.2d at 234:

> The most frequently enunciated rule in Maryland is that although courts will, in a
> proper case, disregard the corporate entity and deal with substance rather than
> form, as though a corporation did not exist, shareholders generally are not held

individually liable for debts or obligations of a corporation except where it is necessary to prevent fraud or enforce a paramount equity.

In *Cancun Adventure*, 862 F.2d at 1047, the Fourth Circuit recognized that "[s]ubstantial ownership of a corporation by a single individual is not alone sufficient to pierce the corporate veil." Although the *Cancun* Court acknowledged that the corporate veil "is not sacrosanct," it cautioned that "[a] court's power to pierce the corporate veil and impose liability on a shareholder in his individual capacity [must] be exercised with extreme circumspection." *Id.*

A party may seek to pierce the corporate veil when "necessary to prevent fraud or enforce a paramount equity." *Hildreth v. Tidewater Equipment Co., Inc.*, 378 Md. 724, 733, 838 A.2d 1204, 1209 (2003) (citations omitted). But, in Maryland "the fiction of the wholly separate corporate form is jealously guarded . . . ." *Baltimore Line Handling Co. v. Brophy*, 771 F. Supp. 2d 531, 552 (D. Md. 2011). Indeed, "Maryland is more restrictive than other jurisdictions in allowing a plaintiff to pierce a corporation's veil." *Residential Warranty Corp.*, 126 Md. App. at 309, 728 A.2d at 790-91; *accord Whitmore v. Hawkins*, 217 F.3d 8463 at *4 (4th Cir. 2000) (table).

Notably, the "[p]ower to pierce the corporate veil is to be exercised 'reluctantly' and 'cautiously,'" *DeWitt Truck Brokers, Inc. v. W. Ray Flemming Co.*, 540 F.2d 681, 683 (4th Cir. 1976) (citation omitted), and the challenge facing a party seeking to pierce the corporate veil has been described as "herculean." *Dixon v. Process Corp.*, 38 Md. App. 644, 645-46, 382 A.2d 893, 894-95 (1978) ("A commercial corporation is a legal entity conceived by the mind of man and legitimated by statute for the avowed purpose of achieving maximum profit with a minimum exposure to liability[] . . . [W]oe unto the creditor who seeks to rip away the corporate façade. . . ."). Indeed, to this Court's knowledge, no Maryland appellate court has issued a reported opinion allowing veil piercing to enforce a "paramount equity." *See Ramlall v. Mobile*

*Pro Corp.*, 202 Md. App. 20, 30, 30 A.3d 1003, 1009 (2011). "This standard has been so narrowly construed that neither [the Maryland Court of Special Appeals] nor the [Maryland] Court of Appeals has ultimately 'found an equitable interest more important than the state's interest in limited shareholder liability.'" *Serio v. Baystate Props., LLC*, 209 Md. App. 545, 559-60, 60 A.3d 475, 484 (2013) (quoting *Residential Warranty*, 126 Md. App. at 307 n.13, 728 A.2d at 789 n.13). Even where a party seeks to hold a shareholder liable for conduct that was "clearly designed to cause the corporation to evade a legal obligation" and "had the effect of rendering [the corporation] 'all but insolvent,'" paramount equity does not justify piercing the veil. *Hildreth*, 378 Md. at 738-39, 838 A.2d at 1212-13 (quoting *Bart Arconti*, 275 Md. at 305, 340 A.2d at 231).

*Dackman*, *supra*, 413 Md. at 135-36; 991 A.2d at 1218, is instructive. There, the Maryland Court of Appeals considered whether a member of an LLC could be held liable for injuries sustained by lead paint victims at a property owned by the LLC. The *Dackman* Court noted that, under existing law, "[a]n individual may be liable . . . 'for torts [he or she] personally commit[s], or which [he or she] inspire[s] or participate[s] in, even though performed in the name of an artificial body." *Id.* at 153, 991 A.2d at 1228 (alterations in *Dackman*). Although previous cases applied tort liability only to officers and agents who had "personally committed, inspired, or participated in torts in the name of a *corporation*", the court determined that the same principles apply to members of LLCs. *Id.* (emphasis added). The Maryland Court of Appeals concluded, *id.* at 154, 991 A.2d at 1228: "An LLC member is liable for torts he or she personally commits, inspires, or participates in because he or she personally committed a wrong, not 'solely' because he or she is a member of the LLC." But, the *Dackman* Court determined that a member of an LLC who had never intended to lease a property and was unaware that a property was occupied, could be held personally liable for lead paint injuries at that property because the

definition of "owner" under the Baltimore City Housing Code was broader than the plain language definition. *Id.* at 148, 991 A.2d at 1225.

According to Griaznov, "Ms. Joyeusaz is a member, the Chief Executive officer, and Resident Agent of Defendant and is responsible, in part, for managing Defendant." ECF 20 at 18. Griaznov points to several documents, including a screen-shot of the J.K. website and emails sent by Joyeusaz regarding the Vehicle, as evidence of her authority to act on behalf of J.K. *Id.*; *see* ECF 20-1 (J.K. website screenshot); ECF 20-2 (corporate charter approval sheet); ECF 20-3 (affidavit of Evgeniy Karavaikin); ECF 20-5 (email from Joyeusaz to Neil Bender); ECF 20-6 (email from Joyeuesaz to Karavaikin).

Additionally, Griaznov has included as an exhibit an Affidavit from Evgeniy Karavaikin, Griaznov's agent, stating that he received emails from Weisheit regarding the conversion of the Vehicle.   See ECF 20-3 ¶ 24.   Griaznov states: "Whether Plaintiff obtains sufficient evidence during discovery to establish personal liability remains to be seen.   However, the members' bald assertion that they did not commit, inspire, or participate in Defendant's tortious conduct is an insufficient basis to preclude the proposed Amended Complaint."   ECF 20 at 19.   Moreover, Griaznov points out that he did not assert claims against the members for breach of contract.   *Id.*

Plaintiff asserts that the addition of the Members comports with *Dackman*.   He argues that the individual actions of the Members give rise to tortious conduct, apart from their mere membership of J.K.   *See* ECF 17-10.   As noted, under *Dackman*, "[a]n LLC member is liable for torts he or she personally commits, inspires, or participates in because he or she personally committed a wrong, not 'solely' because he or she is a member of the LLC." 413 Md. at 154, 991 A.2d at 1228.

In his proposed Amended Complaint, Griaznov has failed to allege more than "naked assertions" or to provide more than "labels and conclusions" against the Members. Without the requisite factual averments, plaintiff merely asserts that "the individual Defendants personally committed, inspired, and/or participated in the completion of the conversion." *Id.* ¶ 37; *see also id.* ¶¶ 54, 64. I agree with the defense that "no fair reading" of the Proposed Amended Complaint can support the inference that the Members themselves acted tortiously. ECF 19 at 12. Indeed, the alleged conduct is consistent with the well established precept that "a corporation must of necessity act through its agents . . . ." *Taha*, *supra*, 378 Md. at 480, 836 A.2d at 638.

As the Supreme Court stated in *Iqbal*, 556 U.S. at 678, a complaint does not suffice "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" (Quoting *Twombly*, 550 U.S. at 557). Accordingly, with respect to the claims against the Members, the amendment would not survive a motion to dismiss under Rule 12(b)(6).

## B.  Proposed Additional Claims

Griaznov seeks to assert a host of new claims against J.K. *See* ECF 17-11. In addition to his existing claims for declaratory judgment, injunctive relief, breach of contract, and a violation of the Maryland Consumer Protection Act, plaintiff seeks to add claims for "Temporary Restraining Order, Preliminary Injunction, and Permanent Injunction" (ECF 17-10 ¶¶ 43-58) ("Count I"); "Preliminary and Permanent Mandatory Injunction" (*id.* ¶¶ 59-68) ("Count II"); replevin (*id.* ¶¶ 69-72) ("Count III"); trespass to chattels (*id.* ¶¶ 73-78) ("Count IV"); and conversion (*id.* ¶¶ 79-84) ("Count V").[6] J.K. opposes the addition of these claims. *See* ECF 19. I consider each, in turn.

---

[6] Count V of the proposed Amended Complaint asserts a claim for trover and conversion. ECF 17-10 ¶¶ 79-84. Trover is the traditional common law action from which the tort of conversion arose. *See Lawson v. Comm. Land Title Ins. Co.*, 69 Md. App. 476, 480, 518 A.2d

### 1. Counts I and II

In his original Complaint, Griaznov seeks an injunction to require J.K. to export the Vehicle.  ECF 1, ¶¶ 47-54.  Counts I and II of the proposed Amended Complaint seek relief that is more extensive than that sought in the original Complaint.

Count I of the proposed Amended Complaint seeks to add a claim for "Temporary Restraining Order, Preliminary Injunction, and Permanent Injunction."  ECF 17-10 ¶¶ 43-58. According to the proposed Amended Complaint, Griaznov "will suffer immediate, substantial and irreparable injury" unless "Defendants are restrained from using, altering, damaging, destroying, or selling the Vehicle . . . ." *Id.* ¶ 56.  In particular, Count I, Paragraph 58,  asks the Court to:

> A. Issue an Order granting Plaintiff a temporary restraining order and, with the exception of any mandatory injunctive relief entered by the Court in favor of Plaintiff, enjoining Defendants from using, altering, damaging, destroying, or selling the Vehicle;
>
> B. Issue an Order granting Plaintiff a preliminary injunction and, with the exception of any mandatory injunctive relief entered by the Court in favor of Plaintiff, enjoining Defendants from using, altering, damaging, destroying, or selling the Vehicle;
>
> C. Issue an Order granting Plaintiff a permanent injunction and, with the exception of any mandatory injunctive relief entered by the Court in favor of Plaintiff, enjoining Defendants from using, altering, damaging, destroying, or selling the Vehicle; and
>
> D. Grant Plaintiff costs and attorney's fees, and such other and further relief as the Court deems appropriate.

Count II of the proposed Amended Complaint (ECF 17-10, ¶¶ 59-68) seeks to add a claim for a preliminary and permanent injunction.  In particular, plaintiff seeks an order requiring "Defendants to restore the Vehicle to its original condition." *Id.* ¶ 68.

---

174, 175-76; *see also Iglesias v. United States*, 848 F.2d 362, 364 (2d Cir. 1988) ("The modern law of conversion is derived from the common law action of trover . . . ."). I shall refer only to conversion.

J.K. opposes these amendments based on futility.   ECF 19 at 13-14.   It argues that "these injunctions are merely remedies and not causes of action." *Id.* at 13.   Furthermore, with respect to proposed Count I, J.K. contends that Griaznov has not set forth allegations sufficient for such relief. *Id.* at 13.

As J.K. points out, a plaintiff seeking a temporary restraining order must demonstrate: "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Real Truth About Obama, Inc. v. Fed. Election Comm'n*, 575 F.3d 342, 346 (4th Cir. 2009), *vacated on other grounds and remanded*, 559 U.S. 1089 (2010), *reinstated in part*, 607 F.3d 355 (4th Cir. 2010) (per curiam); *see Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008).   J.K. argues that Griaznov will not be able to show irreparable harm because "[t]he only harm Plaintiff claims is a decrease in the value of his Vehicle", which "is monetary in nature and can be adequately remedied by monetary compensation." ECF 19 at 14.   Furthermore, with respect to proposed Count I, J.K. contends that a claim for an injunction to prevent it from "from using, altering, damaging, destroying, or selling the Vehicle" is now moot in light of the agreement between the parties. *Id*. at 13; *see* ECF 19-2.

Moreover, J.K. argues that proposed Count II is futile.   In its view, an injunction to restore the Vehicle to its original condition is inappropriate because there is an adequate remedy at law.   ECF 19 at 14-15 (citing *Beane v. Prince George's Cnty.*, 20 Md. App. 383, 397, 315 A.2d 777, 784 (1974)).   J.K. asserts, ECF 19 at 15: "Plaintiff is not entitled to a mandatory injunction in this case because monetary relief is available in the normal course of litigation to fully compensate him for any damages."

In his Reply, Griaznov counters that injunctive relief is appropriate because monetary damages will not suffice. ECF 20 at 12-14. Griaznov points out that "the Vehicle had limited production and is no longer manufactured by McLaren." *Id.* at 14. He argues, *id.*: "If Plaintiff is unable to replace the Vehicle, this fact alone may be sufficient to establish irreparable harm." Furthermore, as to J.K.'s argument that the injunction sought in Count I is moot as a result of the parties' agreement to preserve the status quo, Griaznov argues that this does not alter his right to pursue permanent injunctive relief. *Id.* And, Griaznov maintains that he is entitled to seek injunctive relief to require restoration of the Vehicle. ECF 20 at 12-14. He states, *id.* at 13: "Defendant seems to have improperly applied a plaintiff's burden in moving for injunctive relief, rather than the notice pleading standards provided for by Federal Rule of Civil Procedure 8 . . . ." Based on Rule 8, Griaznov asserts, *id.*: "Plaintiff need not analyze each of the factors considered in determining the propriety of injunctive relief within the Complaint."

In my view, the defense exalts form over substance. Even if the proposed requests for injunctive relief are not valid as stand-alone counts, plaintiff is entitled to pursue such claims for relief and would be entitled to amend to include the requests as prayers for relief.

"[A] request for injunctive relief does not constitute an independent cause of action; rather, the injunction is merely the remedy sought for the legal wrongs alleged in . . . the substantive counts." *Simone v. VSL Pharm., Inc.*, No. TDC-15-1356, 2017 WL 66323, at *10 (D. Md. Jan. 5, 2017) (quoting *Fare Deals Ltd. v. World Choice Travel.com, Inc.*, 180 F. Supp. 2d 678, 682 n.1 (D. Md. 2001)) (alteration in *Simone* omitted); *see also Orteck Int'l Inc. v. Transpacific Tire Wheel, Inc.*, 704 F. Supp. 2d 499, 521 (D. Md. 2010), *aff'd sub nom. Orteck Int'l v. TransPacific Tire & Wheel, Inc.*, 457 F. App'x 256 (4th Cir. 2011) ("An injunction and an accounting are remedies, not independent causes of action."). Nevertheless, the fact that a plaintiff pleads

injunctive relief as an independent claim does not automatically mandate dismissal. For example, in *Dwoskin v. Bank of America, N.A.*, 850 F. Supp. 2d 557, 573 (D. Md. 2012), in which plaintiffs pleaded injunctive relief as a count in their complaint, Judge Blake determined that dismissal of that count was not necessary because "the [plaintiffs] have adequately pled five causes of action in this case, leaving them causes of action on which they can seek the requested injunction." *See also M.J. Woods, Inc. v. Little Rapids Corp.*, No. 1:16-CV-356-MOC-DLH, 2016 WL 7494469, at *4 (W.D.N.C. Dec. 30, 2016) (dismissing a count for injunction, but incorporating it "by reference elsewhere without further amendment").

To be sure, courts have found dismissal of independent claims for injunctive relief appropriate in some instances. For example, in *Simone*, 2017 WL 66323, Judge Chuang dismissed counts of a complaint seeking a preliminary and permanent injunction. He reasoned that "[w]here . . . injunctive relief is included in the request for relief, there is no reason to allow these duplicative requests to proceed in the improper guise of independent causes of action." *Id.* at *10.

Griaznov has asserted independent claims for injunctive relief in his proposed Amended Complaint. Although requests for injunctive relief are not themselves causes of action, there are claims in the proposed Amended Complaint for which plaintiff may be able to obtain injunctive relief. *See Dwoskin*, 850 F. Supp. 2d at 573. And, unlike in *Simone*, Griaznov does not include the injunctive relief sought in Counts I and II of the proposed Amended Complaint elsewhere in other claims.

I agree with Griaznov that this is not the appropriate stage to determine whether monetary damages would constitute sufficient relief. *C.f. Korotki v. Hampstead*, No. 2901/02, slip op. at 26-28 (Md. Ct. Spec. App. Feb. 6, 2004) (unpublished) (describing measures of damages where

unique vehicle is damaged as the result of defendant's tortious conduct). As Judge Blake stated in *Dwoskin*, 850 F. Supp. 2d at 574: "Although this will certainly be an issue in the case going forward, I cannot say with legal certainty at this stage of the litigation that monetary damages will be adequate."

Therefore, as remedies in regard to other claims, I shall permit Griaznov to add his claims for permanent injunctive relief, as requested in Count I and Count II of the proposed Amended Complaint, to the extent that such relief is otherwise appropriate. However, I shall not permit the amendment to the extent that plaintiff seeks preliminary injunctive relief. If plaintiff wishes to seek a preliminary injunction, he may do so in accordance with Fed. R. Civ. P. 65. *See, e.g.*, Wright and Miller § 2949 ("The appropriate procedure for requesting a preliminary injunction is by motion . . . .").

### 2.  Count III

Griaznov seeks to amend his Complaint to add a claim for replevin. *See* ECF 17-10 ¶¶ 69-72. In particular, Griaznov asks the Court to "grant Plaintiff possession of the Vehicle and order Defendants to surrender the Vehicle after Defendants have restore [sic] the Vehicle to its original condition . . . ." *Id.* ¶ 72.

"[U]nder Maryland law, replevin allows '[a] person claiming the right to immediate possession of personal property [to] file an action for possession before judgment." *IFAST, Ltd. v. All. for Telecommunications Indus. Sols., Inc.*, CCB-06-2088, 2007 WL 3224582, at *10 (D. Md. Sept. 27, 2007) (quoting 1 M.L.E. Actions § 30 (2006)) (alterations in *IFAST, Ltd.*); *see also Dehn Motor Sales, LLC v. Schultz*, 439 Md. 460, 486, 96 A.3d 221, 237 (2014) ("In a replevin action, a party seeks basically to recover specific goods and chattels to which he or she asserts an entitlement to possession."); *Furda v. State*, 193 Md. App. 371, 398; 997 A.2d 856, 872 n.17

(2010) ("Replevin is appropriate 'in all cases where the object of the suit is to recover possession of specific goods and chattels, to the possession of which the plaintiff claims to be entitled at the time of instituting the suit.'") (citation omitted). "[W]hoever is entitled to possession, whatever may be his title in other respects, may maintain or defeat the action of replevin; his right to success in the action of replevin depends entirely on his right to possession." *Dehn Motor Sales*, 439 Md. at 486; 96 A3d at 237 (quoting *Shorter v. Dail*, 122 Md. 101, 89 A. 329, 330 (1913)) (alteration in *Dehn Motor Sales*).

J.K. maintains that the Court should not permit Griaznov to amend his Complaint to add a count for replevin because, according to J.K., the amendment is both futile and brought in bad faith. ECF 19 at 11, 16. According to J.K., the replevin count is "improper as a matter of law because Plaintiff is not entitled to possession of the Vehicle until he satisfies his outstanding payment obligations." *Id.* at 16. And, J.K. maintains that Griaznov cannot establish his entitlement to possession of the Vehicle because J.K. has a lien on the Vehicle, "and does not have to relinquish possession unless either the charges giving rise to the lien are paid or the lien is otherwise discharged." (citing C.L. §§ 16-203, 16-207).[7]

Defendant insists that it has lawful possession of the Vehicle under Maryland's Garageman's Lien Statute. C.L. § 16-202. Although the parties do not provide a thorough overview of Maryland's Garageman's Lien Statute, an understanding of that law is helpful.

Section 16-202 provides, in relevant part, *id.*:

---

[7] J.K. also adds the specious argument that the Court should infer bad faith from the fact that Griaznov's counts for replevin, trespass to chattels, and conversion could have been asserted in the original Complaint. ECF 19 at 11. Although counsel for Griaznov could have brought such claims in the original Complaint, the failure to do so does not necessarily suggest bad faith. Accusing a lawyer of bad faith merely for failing to identify all possible claims at the outset of a case is itself an assertion that could give rise to a claim of bad faith.

(c)(1) Any person who, with the consent of the owner, has custody of a motor vehicle and who, at the request of the owner, provides a service to or materials for the motor vehicle, has a lien on the motor vehicle for any charge incurred for any:

> (i) Repair or rebuilding;
>
> (ii) Storage; or
>
> (iii) Tires or other parts or accessories.

(2) A lien is created under this subsection when any charges set out under paragraph (1) of this subsection giving rise to the lien are incurred.

In *Allstate Lien & Recovery Corp. v. Stansbury*, 445 Md. 187, 200-03, 126 A.3d 40, 48-49 (2015), the Maryland Court of Appeals explained the process by which a garageman's lien is created and enforced.   It said, *id.* (quoting *Friendly Fin. Corp. v. Orbit Chrysler Plymouth Dodge Truck, Inc.*, 378 Md. 337, 345-47, 835 A.2d 1197, 1202-03 (2003)):

> The Maryland General Assembly, when it enacted the provisions relating to garageman's liens, envisioned that the statute would operate according to the following sequence of events:
>
> > (1) The owner in possession of the motor vehicle takes it (or has it towed) to the garage and requests that it be repaired. § 16-202(c)(1).[]
> >
> > (2) The garage performs the requested repairs, creating a lien in favor of [the] garage for the repair bill, and bills the owner. § 16-202(c)(2)(i).[]
> >
> > (3) The owner fails to pay the bill.
> >
> > (4) The garage stores the vehicle, creating a lien in favor of the garage for storage costs. § 16-202(c)(1)(ii).
> >
> > (5) The garage retains possession of the vehicle until either the charges are paid or the lien is otherwise discharged. § 16-203(a).[]
> >
> > (6) The garage, within 30 days of the creation of the lien, sends notice of the lien to all holders of perfected security interests. § 16-203(b)(1)(i).[]
> >
> > (7) If the bill remains unpaid for 30 days, the garage, at its option, may initiate a public sale of the vehicle. § 16-207(a).[]
> >
> > (8) The garage sends notice, at least 10 days prior to sale, to the owner, all holders of perfected security interests, and the Motor Vehicle Administration. § 16-207(b)(2).[]
> >
> > (9) The garage publishes notice once a week for the two weeks immediately preceding the sale in one or more newspapers of general circulation in the county where the sale is to be held. § 16-207(b)(1).[]
> >
> > (10) The garage sells the vehicle. § 16-207.

(11) Proceeds of sale are applied as follows: § 16-207(e)(1)(i).[]

    i. Expenses of the sale. § 16-207(e)(1)(ii).

    ii. Third-party storage fees. § 16-207(e)(1)(ii).

    iii. The lien claim for garage repair and storage bills. § 16-207(e)(1)(iii).

    iv. Any purchase money security interest. § 16-107(e)(1)(iv).

    v. Any remaining secured parties of record. § 16-207(e)(1)(v).

    vi. Any remaining balance to the owner. § 16-207(e)(4).[]

Griaznov points to C.L. § 16-208, which provides "a vehicle owner the opportunity to file a replevin action[] to secure the return of his car from the retaining garageman, prior to sale." *Stansbury*, 445 Md. at 207, 126 A.3d at 52. It states:

(a) If the owner of property subject to a lien institutes an action of replevin and establishes a right to the issuance of a writ but for the defendant's alleged lien under this subtitle, the court shall issue the writ.

(b)(1) In the trial of the replevin action, the court shall determine:

    (i)    The amount of the lien claim, if any; and

    (ii)    The amount of any expenses properly incurred or accrued before the trial, including storage and advertising.

  (2)  If judgment is for the defendant:

    (i) It may include reasonable attorney's fees; and

    (ii) It shall be either for the property replevied or for the amounts determined in accordance with paragraph (1) of this subsection.

  (3)  The defendant has the burden of proof to establish his lien claim to the same extent as if he were a plaintiff in an action to secure judgment on an open account.

In particular, Griaznov notes that under Maryland law "if Plaintiff establishes that he is entitled to a writ of replevin, but for the alleged lien, the court *shall* issue the writ." ECF 20 at 12 (citing C.L. § 16-208) (emphasis in ECF 20).  And, Griaznov argues that J.K. never established a

proper lien because plaintiff "did not consent to the parts or labor purportedly provided by Defendant." ECF 20 at 12.

In my view, Griaznov's claim for replevin is not futile.  As provided by C.L. § 16-208, a court may issue a writ of replevin when the owner of a vehicle, such as plaintiff, would have rightful possession of that vehicle but for a lien.  *See* ECF 17-10 ¶¶ 7-8.  Under C.L. § 16-208, Griaznov's claim for replevin is not clearly "insufficient or frivolous on its face." *Johnson*, 785 F.2d at 510.

### 3.   Counts IV and V

Count IV of Griaznov's proposed Amended Complaint seeks to add a claim for trespass to chattels.  ECF 17-10 at ¶¶ 73-78.  Count V asserts a claim for conversion.  *Id.* at ¶¶ 79-84.

In Maryland, trespass to chattels "has been defined as an intentional use or intermeddling with the chattel in possession of another . . . , such intermeddling occurring . . . when 'the chattel is impaired as to its condition, quality, or value." *United States v. Arora,* 860 F. Supp. 1091, 1097 (D. Md. 1994) (quoting Restatement (Second) of Torts, §§ 217(b), 218(b)), *aff'd*, 56 F.3d 62 (4th Cir. 1995); *accord Ground Zero Museum Workshop v. Wilson*, 813 F. Supp. 2d 678, 697 (D. Md. 2011).  Conversion is defined as "an intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel." *Arora*, 860 F. Supp. at 1097 (quoting Restatement (Second) of Torts, § 222A(1)) (alteration in *Arora*).  To state a claim for trespass to chattels or conversion, a plaintiff must be entitled to rightful possession.  *See, e.g., America Online, Inc. v. IMS*, 24 F. Supp. 2d 548, 550 (E.D. Va. 1998) ("A trespass to chattels occurs when one party intentionally uses or intermeddles with personal property in rightful possession of another without authorization.") (citing Restatement (Second of Torts § 217(b)); *First Union Nat.*

*Bank v. N.Y. Life Ins. & Annuity Corp.*, 152 F. Supp. 2d 850, 854 (D. Md. 2001) ("In order to recover for conversion, 'one must have either been in actual possession or have had the right to immediate possession in the converted asset.'") (citation omitted).

J.K. contends that the claims for trespass to chattels and conversion are futile because Griaznov cannot show that J.K. "withheld the Vehicle 'without authority or justification." ECF 19 at 17.   According to J.K., it "is in rightful possession of the Vehicle because it has a lien under Maryland law and can retain possession until paid in full for the amounts due under the Agreement." *Id.*  Moreover, J.K. argues that the claim for trespass to chattels is futile because the value of the Vehicle has not been impaired.  *Id.*  Rather, J.K. contends that the value of the Vehicle has been increased as it has been altered to comply with the restrictive import regulations of the NHTSA. *Id.* at 17-18; *see* ECF 19-1 (Weisheit Affidavit), ¶¶ 16-17.

In his Reply, Griaznov counters that his claims for trespass to chattels and conversion are not futile because J.K. is not in rightful possession of the Vehicle.  ECF 20 at 8-11.  According to Griaznov, J.K. cannot have proper possession under the Maryland Garageman's Lien Statute (C.L.  §  16-202(c)) because that statute is preempted by the Safety Act, which provides restrictions on what actions a registered importer can take with respect to a car that has not been approved for use in the United States.  *Id.* at 9-10.  Alternatively, Griaznov argues that J.K. cannot have rightful possession because no proper lien was created on the Vehicle.  *Id.* at 10-11.

In my view, Count IV and Count V of the proposed Amended Complaint are not futile.  In essence, J.K. asks the Court to resolve the merits of the case.  At this juncture, however, it is not appropriate for the Court to determine whether J.K. has a valid lien.  It is also premature for the Court to determine whether the Garageman's Lien Statute is preempted by the Safety Act.

### IV.     Conclusion

In sum, I shall GRANT in part and DENY in part the Motion to Amend.  ECF 17.   I shall GRANT the Motion with respect to Counts III, IV, and V of the Amended Complaint.  I shall also GRANT the Motion with respect to Count I and Count II, to the extent that these claims seek permanent injunctive relief.

However, I shall DENY the Motion with respect to the addition of the Members as defendants, because the claims against those defendants would not withstand a motion to dismiss under Rule 12(b)(6).  Griaznov shall have twenty-one days from the date of docketing of this Memorandum Opinion and Order in which to file an amended complaint consistent with this Memorandum Opinion.

An Order follows.


Date:   March 8, 2017                              _____/s/_____
                                                  Ellen Lipton Hollander
                                                  United States District Judge