IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

KONSTANTIN GRIAZNOV,
*Plaintiff/Counterclaim Defendant*,

v.

J-K TECHNOLOGIES, LLC,
*Defendant/Counterclaim Plaintiff.*

Civil Action No. ELH-16-2522

**MEMORANDUM**

This Memorandum resolves the motion for attorneys' fees and costs (ECF 60) filed by defendant/counterclaim plaintiff J.K. Technologies, LLC ("J.K."). It is supported by a memorandum of law (ECF 60-1) (collectively, "Motion") and several exhibits documenting J.K.'s fees and costs. ECF 60-3 to ECF 60-5.

The Motion follows the Court's entry of summary judgment in favor of J.K., finding Griaznov liable to defendant in the amount of $131,012.83, plus costs. *See* ECF 58; ECF 59. The judgment is rooted in a contract to bring a 2012 McLaren MP4-12C into compliance with government regulations regarding safety and emissions. *See* ECF 45-4 (the "Agreement"). The facts of that case are set out at length in my Memorandum Opinion of September 11, 2018, which are incorporated here, and need not be restated. *See* ECF 58.

Plaintiff has not responded to the Motion, and the time to do so has expired. No hearing is necessary to resolve the Motion. *See* Local Rule 105.6. For the reasons that follow, I will reduce the attorneys' hourly rates to bring them into compliance with the rates customarily permitted in this District. As a result, I will award $92,530.00 in fees to defendant. I will also award $548.66 in costs, for a total of $93,078.66.

## I. Discussion

### A.

The Agreement states, in pertinent part: "If J.K. employs attorneys to enforce any rights arising out of or relating to this Agreement, and J.K. prevails in any action brought by its attorneys, [Griaznov] shall pay J.K.'s reasonable attorneys' fees, costs and other expenses." ECF 45-4 at 4. Pursuant to the Agreement, J.K. seeks attorneys' fees and costs associated with this litigation. *See* ECF 61.

In a diversity action such as this, *see* 28 U.S.C. § 1332, a party's right to recover attorneys' fees is ordinarily governed by state law. *See IOM Corp. v. Brown Forman Corp.*, 627 F.3d 440, 451 (1st Cir. 2010); *McCollum v. State Farm Ins. Co.*, 376 F. App'x 217, 220 (3d Cir. 2010); *Ranger Const. Co. v. Prince William County Sch. Bd.*, 605 F.2d 1298, 1301 (4th Cir. 1979); *Rohn Prods. Int'l, LC v. Sofitel Capital Corp.*, WDQ-06-504, 2010 WL 3943747, at *4 n.13 (D. Md. Oct. 7, 2010).

Maryland is the forum state, and its law governs this Court's choice-of-law analysis. *Ground Zero Museum Workshop v. Wilson*, 813 F. Supp. 2d 678, 696 (D. Md. 2011). Under Maryland law, "the parties to a contract may agree as to the law which will govern their transaction." *Bank of Am., N.A. v. Jill P. Mitchell Living Trust*, 822 F. Supp. 2d 505, 517 (D. Md. 2011) (internal quotation marks omitted). The Agreement contains a choice of law provision that stipulates to the application of Maryland law. *See* ECF 45-4 at 5. Accordingly, I will apply Maryland law here.

In general, Maryland follows the "American Rule," under which "a prevailing party is not awarded attorneys' fees 'unless (1) the parties to a contract have an agreement to that effect, (2) there is a statute that allows the imposition of such fees, (3) the wrongful conduct of a defendant

forces a plaintiff into litigation with a third party, or (4) a plaintiff is forced to defend against a malicious prosecution.'" *Nova Research, Inc. v. Penske Truck Leasing Co.,* 405 Md. 435, 445, 952 A.2d 275, 281 (2008) (quoting *Thomas v. Gladstone,* 386 Md. 693, 699, 874 A.2d 434, 437 (2005)).

"Contract provisions providing for awards of attorney's fees to the prevailing party in litigation under the contract generally are valid and enforceable in Maryland." *Myers v. Kayhoe*, 391 Md. 188, 207, 892 A.2d 520, 532 (2006). "It is a fundamental principle of contract law that it is 'improper for the court to rewrite the terms of a contract, or draw a new contract for the parties, when the terms thereof are clear and unambiguous, simply to avoid hardships.'" *Calomiris v. Woods,* 353 Md. 425, 445, 727 A.2d 358, 368 (1999) (quoting *Canaras v. Lift Truck Servs.,* 272 Md. 337, 350, 322 A.2d 866, 873 (1974)); *see Loudin Ins. Agency, Inc. v. Aetna Cas. & Sur. Co.,* 966 F.2d 1443, 1992 WL 145269, at *5 (4th Cir. 1992) (per curiam) ("[A] court will not rewrite the parties' contract simply because one party is no longer satisfied with the bargain he struck.").

However, "Maryland law limits the amount of contractual attorneys [sic] fees to actual fees incurred, regardless of whether the contract provides for a greater amount." *SunTrust Bank v. Goldman*, 201 Md. App. 390, 398, 29 A.3d 724, 728 (2011). Moreover, "[e]ven in the absence of a contract term limiting recovery to reasonable fees, trial courts are required to read such a term into the contract and examine the prevailing party's fee request for reasonableness." *Myers*, 391 Md. at 207, 892 A.2d at 532; *see also Atl. Contracting & Material Co. v. Ulico Cas. Co.*, 380 Md. 285, 316, 844 A.2d 460, 478 (2004); *SunTrust*, 201 Md. App. at 401, 29 A.3d at 730 ("Current law allows a court to grant only those attorney's fees it finds reasonable."). Thus, "courts must routinely undertake an inquiry into the reasonableness of any proposed fee before settling on an award." *Monmouth Meadows Homeowners Ass'n, Inc. v. Hamilton*, 416 Md. 325, 333, 7 A.3d

1, 5 (2010). The "reasonableness of attorney's fees is a factual determination within the sound discretion of the court." *Myers*, 391 Md. at 207, 892 A.2d at 532.

"'The burden is on the party seeking recovery to provide the evidence necessary for the fact finder to evaluate the reasonableness of the fees.'" *Ulico*, 380 Md. at 316, 844 A.2d at 478 (citation omitted). Therefore, the party seeking a fee award must provide "'detailed records'" that specify "'the services performed, by whom they were performed, the time expended thereon, and the hourly rates charged.'" *Rauch v. McCall*, 134 Md. App. 624, 639, 761 A.2d 76, 84 (2000) (citation omitted), *cert. denied*, 362 Md. 625, 766 A.2d 148 (2001). "'[W]ithout such records, the reasonableness, *vel non*, of the fees can be determined only by conjecture or opinion of the attorney seeking the fees and would therefore not be supported by competent evidence.'" *Id.* at 639, 761 A.2d at 85 (citation omitted).

Maryland courts ordinarily utilize the "lodestar" approach when determining attorneys' fees under fee-shifting statutes. *Friolo v. Frankel,* 373 Md. 501, 504-05, 819 A.2d 354, 356 (2003) (*"Friolo I"*).[1] However, the Maryland Court of Appeals has held that the lodestar approach is "an inappropriate mechanism for calculating fee awards" under contractual fee-shifting provisions in "disputes between private parties over breaches of contract." *Monmouth Meadows,* 416 Md. at 336, 7 A.3d at 7; *see also E. Shore Title Co. v. Ochse*, 453 Md. 303, 337,

---

[1] The *Friolo* litigation has spawned numerous reported opinions of the Maryland appellate courts concerning the award of attorneys' fees. *See Frankel v. Friolo,* 170 Md. App. 441, 907 A.2d 363 (2006) (*"Friolo II"*) (holding that, when applying the lodestar approach, a court must provide a "clear explanation of the factors employed"), *aff'd,* 403 Md. 443, 942 A.2d 1242 (2008) (*"Friolo III"*) (holding that an award of attorneys' fees under a fee shifting statute should include "appellate fees . . . incurred in successfully challenging . . . the attorneys' fee awarded"); *Friolo v. Frankel*, 438 Md. 304, 91 A.3d 1156 (2014) (*"Friolo IV"*) (reiterating the loadstar approach and concluding that a plaintiff's continued litigation in lieu of settlement does not preclude attorneys' fees and that appellate attorneys' fees are available pursuant to an appeal concerning attorneys' fees).

160 A.3d 1238, 1258 (2017) (stating that the "litigation did not involve a fee-shifting statute, and therefore the lodestar method of calculation would not be appropriate"). This is because a "contractual fee-shifting provision is designed by the parties, not by the legislature. . . . Thus, it usually serves no larger public purpose than the interests of the parties." *Congressional Hotel Corp. v. Mervis Diamond Corp.,* 200 Md. App. 489, 505, 28 A.3d 75, 84 (2011).

In Maryland, in regard to an award based on a contract, a court "should use the factors set forth in Rule 1.5 [of the Maryland Rules of Professional Conduct ("MRPC")[2]] as the foundation for analysis of what constitutes a reasonable fee when the court awards fees based on a contract entered by the parties authorizing an award of fees." *Monmouth Meadows,* 416 Md. at 336-37, 7 A.3d at 8. MRPC 1.5(a) enumerates eight non-exclusive "factors to be considered in determining the reasonableness of a fee":

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment of the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

---

[2] MRPC 1.5(a) is a standard of professional ethics, generally applicable to all attorney-client relationships, which mandates that an attorney "shall not make an agreement for, charge, or collect an unreasonable fee or an unreasonable amount for expenses."

(8) whether the fee is fixed or contingent.

A list of factors similar to those in MRPC 1.5 was enunciated for use in a lodestar analysis in the seminal case of *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir.1974). The so-called *"Johnson* factors" have been adopted for use in lodestar cases by the Fourth Circuit, *see Barber v. Kimbrell's, Inc.,* 577 F.2d 216, 226 n. 28 (4th Cir. 1978), and in Maryland. *See Friolo I,* 373 Md. at 522 n. 2, 819 A. 2d at 366 n .2.

Cases decided under the lodestar approach can "provide helpful guidance" in contractual fee-shifting cases. *Congressional Hotel,* 200 Md. App. at 505, 28 A.3d at 85. This is because "there is likely to be some overlap between the Rule 1.5 factors and the mitigating factors typically considered in a lodestar analysis." *Monmouth Meadows,* 416 Md. at 337, 7 A.3d at 8.

"In order to apply Rule 1.5 to a fee award, a court does not need to evaluate each factor separately." *SunTrust,* 201 Md. App. at 401, 29 A.3d at 730; *see Monmouth Meadows,* 416 Md. at 337 n.11, 7 A.3d at 8 n.11. Indeed, a court need not "make explicit findings with respect to Rule 1.5" at all, or even "mention Rule 1.5 as long as it utilizes the rule as its guiding principle in determining reasonableness." *Monmouth Meadows,* 416 Md. at 340 n. 13, 7 A.3d at 10 n.13.

Moreover, when conducting an MRPC 1.5 analysis, a court "should consider the amount of the fee award in relation to the principal amount in litigation, and this may result in a downward adjustment. Although fee awards may approach or even exceed the amount at issue, the relative size of the award is something to be evaluated." *Id.* at 337, 7 A.3d at 8. And, a "trial court also may consider, in its discretion, any other factor reasonably related to a fair award of attorneys' fees." *Id.* at 337-38, 7 A.3d at 8.

This Court's Local Rules also provide "Rules and Guidelines for Determining Attorneys' Fees in Certain Cases." *See* Local Rules app. B (the "Guidelines"). Among other things, the

Guidelines set out mandatory rules regarding billing format and time recordation, and require submission of quarterly statements to the opponent. *Id.* § 1. It also outlines non-compensable time and reimbursable expenses and sets guidelines for hourly rates for attorneys. *Id.* §§ 2-4.

Despite the Court's previous discussion of the Guidelines, *see* ECF 58 at 41, defendant failed to comply with of the Guidelines' requirements. In his affidavit, Mr. Roussillion declares that he sent "statements to Plaintiff's counsel on an approximately quarterly basis setting forth the total time and value of the time being expended on behalf of J.K." ECF 60-3, ¶ 8; *see also* ECF 60-1 at 3-4. However, in its submission to the Court, defendant failed to organize the attorneys' fees by stage of litigation as required by the Guidelines. *See* Local Rules app. B at § 1.b. Nevertheless, the Court has adequate information to determine the proper fee award.

As noted, J.K. was awarded a judgment of $131,012.82. ECF 58. It has requested $108,879.66 in attorneys' fees and costs. ECF 60-1 at 2. The requested fee reflects an aggregate of 297.1 billed hours. Defendant submitted three exhibits in support of the Motion. The first exhibit (ECF 60-3) consists of an affidavit of Derek P. Roussillion. The second exhibit (ECF 60-4) consists of an affidavit of Matthew S. Sturtz. The third exhibit (ECF 60-5) consists of monthly billing statements containing "time entry records with detailed descriptions of the services performed by each attorney." ECF 60-1.

**B.**

Under MRPC 1.5(a)(3), a court reviewing an attorneys' fee request must consider "the fee customarily charged in the locality for similar legal services." In this inquiry, the Fourth Circuit follows the "locality rule," whereby "'[t]he community in which the court sits is the first place to look to in evaluating the prevailing market rate.'" *Montcalm Pub. Corp. v. Commonwealth of Va.*, 199 F.3d 168, 173 (4th Cir. 1999) (citation omitted). "Evidence of the prevailing market rate

usually takes the form of affidavits from other counsel attesting to their rates or the prevailing market rate. However, in the absence of sufficient documentation, the court may rely on its own knowledge of the market." *CoStar Group, Inc. v. LoopNet, Inc.*, 106 F. Supp. 2d 780, 788 (D. Md. 2000).

"In the District of Maryland, this market knowledge is embedded in the Guidelines." *Gonzales v. Caron*, CBD-10-2188, 2011 WL 3886979, at *2 (D. Md. Sept. 2, 2011). The Guidelines set forth advisory fee ranges for attorneys based on years of experience. The rates "are intended solely to provide practical guidance to lawyers and judges when requesting, challenging and awarding fees," and "may serve to make the fee petition less onerous by narrowing the debate over the range of a reasonable hourly rate in many cases." Local Rules app. B at § 3 n. *. Although "the Guidelines are not binding, generally this Court presumes that a rate is reasonable if it falls within these ranges." *Gonzales*, 2011 WL 3886979, at *2.

The hourly rates in the Guidelines are as follows:

a. Lawyers admitted to the bar for less than five (5) years: $150-225.
b. Lawyers admitted to the bar for five (5) to eight (8) years: $165-300.
c. Lawyers admitted to the bar for nine (9) to fourteen (14) years: $225-350.
d. Lawyers admitted to the bar for fifteen (15) years or more: $300-475.
e. Paralegals and law clerks: $95-150.

The exhibits reflect that four attorneys with the law firm of Miles & Stockbridge P.C. ("Miles") were primarily responsible for the work performed on the case for defendant. Matthew S. Sturtz was a principal at Miles until February 28, 2018, and is presently a partner at Nelson Mullins Riley & Scarborough, LLC. He was admitted to the bar in 2006. His hourly rate was $485 in 2015 and 2016, $495 in 2017, and $515 in 2018. Derek P. Roussillon is a principal at Miles, admitted to the bar in 2003. His hourly rate was $375 in 2015 and 2016, $390 in 2017, and $410 in 2018.

Because the hourly rates of Mr. Sturtz and Mr. Roussillon exceed the applicable rates provided by the Guidelines, I will reduce the fee awards such that they are compensated for their work at the highest level of the applicable Guidelines range, but lower than their requested hourly rate.

Rachel Mech, Zachary Schultz, and Menachem Lanner are associates at Miles. Ms. Mech's hourly rate was $255 in 2017 and $285 in 2018. Mr. Schultz's hourly rate was $255 in 2017. And Mr. Lanner's average hourly rate was $285. Because the defendant does not state when Ms. Mech, Mr. Schultz, or Mr. Lanner were admitted to the bar, the Court shall assume that they have less than five years of experience. The Guidelines suggest that lawyers admitted to the bar for less than five years may generally bill at an hourly rate of $150 to $225. Pursuant to the Guidelines, I will reduce the fee awards such that they are compensated for their work at the highest level of the applicable Guidelines range, *i.e.,* $225 per hour.

Legal assistants Susan M. Lee and Renee Coshin Coolbaugh charged an hourly rate of $240 and $245, respectively. I shall reduce their hourly rate to $150, which corresponds to the highest rate within the applicable Guidelines range.

Defendant failed to provide biographical information for three individuals who billed de minimis amounts. Sandra S. Ekeson's hourly rate was $235; Bob Ashlock's was $110; and Joel L. Perell, Jr.'s was $485. The Court shall assume that Ms. Ekeson and Mr. Ashlock are paralegals or law clerks. Accordingly, the Court shall reduce Ms. Ekeson's hourly rate to $150. But, the Court shall not adjust Mr. Ashlock's rate as it falls within the applicable Guidelines range. The Court shall assume Mr. Perell is an attorney with less than five years of experience, and reduce his hourly rate to $225.

**C.**

The Guidelines provide, Local Rules app. B at § 2(d):

> Generally, only one lawyer is to be compensated for client, third party, and intra-office conferences, although if only one lawyer is being compensated the time may be charged at the rate of the more senior lawyer. Compensation may be paid for the attendance of more than one lawyer where justified for specific purposes such as periodic conferences of defined duration held for the purpose of work organization, strategy, and delegation of tasks in cases where such conferences are reasonably necessary for the proper management of the litigation.

The invoices reveal 13 dates on which more than one attorney billed for the same discussion or conference, for a total of 8.4 hours billed by more than one attorney.[3] Nevertheless, the duplicate time entries fit within the Guidelines' allowance of compensation for more than one lawyer for "periodic conferences of defined duration held for the purpose of work organization, strategy, and delegation of tasks[.]" *Id.* Indeed, there were many occasions in the billing in which a multiple-attorney conference occurred but, appropriately, only one attorney billed for it.

The invoice dated September 22, 2017, included $156 for outstanding accounts receivable. *See* ECF 60-5 at 77. I shall exclude this amount from the fee award.

**D.**

It is not lost on me that the defendant's attorneys' fees are nearly as large as the judgment against Griaznov. But, it was vigorously contested on both sides, which necessarily led defendant to incur the legal fees now at issue. Accordingly, I shall not adjust the fees for disproportionality.

**II.     Conclusion**

Defendant has requested $108,879.66 in attorneys' fees, reflecting 297.1 hours of work. For the reasons stated, I will reduce the attorneys' hourly rates to bring them into compliance with

---

[3] Some of the duplicative intraoffice conferences are billed as one element of a larger billing entry, making it difficult to determine the exact amount of the duplicative entry. This number represents the Court's best estimate of the duplicative charges.

the Guidelines.  Additionally, I shall exclude $156 for the accounts receivables.  As a result, I will award $92,530.00 in fees to defendant.  I will also award $548.66 in costs, for a total of $93,078.66.

An Order follows.

Date:   May 16, 2019

/s/
Ellen Lipton Hollander
United States District Judge